UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------X

SAMUEL CRUZ,
                    Plaintiff,                    11 Civ. 8378

     -against-                                    <u>OPINION</u>

SILVANO MARCHETTO,
                    Defendant,
                    Third-Party Plaintiff,

     -against-

GARAGE MANAGEMENT CORPORATION,
                    Third-Party Defendant.

------------------------------------X

A P P E A R A N C E S:

          <u>Attorney for Plaintiff</u>

          PHILLIPS & PHILLIPS
          30 Broad Street, 35th Floor
          New York, NY 10004

          By:  Edward Joseph Kennedy, Esq.
               Jesse C. Rose, Esq.
               William Kerry Phillips, Esq.

          <u>Attorneys for Defendant</u>

          THE SCHWARTZ LAW FIRM
          5402 Third Avenue
          Brooklyn, NY 11220

          By:  David Marc Schwartz, Esq.

          <u>Attorneys for Third Party Defendant</u>

          FARBER BROCKS & ZANE LLP
          51 Charles Street, 2nd Floor
          Mineola, NY 11501

          By:  Braden Harleigh Farber, Esq.
               Tracy L. Frankel, Esq.

**D.J. Sweet**

Plaintiff Samuel Cruz ("Cruz" or the "Plaintiff") has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the counterclaims and affirmative defenses of the defendant Silvano Marchetto ("Marchetto" or the "Defendant").  Third-party defendant Garage Management Corporation ("GMC" or the "Third-Party Defendant") has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the third-party complaint of Marchetto.

Based upon the conclusions set forth below, both motions are granted.

## I. Prior Proceedings

The Plaintiff filed his initial complaint on November 18, 2011 alleging six causes of action, including two claims of unlawful employment practices under the New York City Administrative Code, battery, assault, intentional infliction of emotional distress and false imprisonment.

1

Invoking Rules 12(b)(6), 12(b)(1) and 20(a) of the Federal Rules of Civil Procedure, the Defendant moved to dismiss the entirety of the initial complaint on December 22, 2011. On February 8, 2012, the motion to dismiss was heard and granted as to the first, second and sixth causes of action (the "February 8 Order"). The Plaintiff was granted 20 days to replead. (Id.).

On February 23, 2012, the Plaintiff filed his amended complaint (the "AC") alleging battery, assault and intentional infliction of emotional distress. The Defendant filed his amended answer with counterclaims on March 30, 2012 (the "AA"). The AA asserted affirmative defenses of failure to state a claim, third-party liability for any damages, the doctrine of unclean hands, and failure to act. The AA also alleged that the Plaintiff (1) defamed the Defendant and (2) intentionally inflicted emotional distress.

On April 9, 2012, the Plaintiff moved to dismiss the counterclaims and affirmative defenses. The motion was heard and marked fully submitted on May 16, 2012.

On March 20, 2012, the Defendant filed his third-party complaint ("TPC") against GMC pursuant to Rules 14 and 18(a) of

the Federal Rules of Civil Procedure.  The TPC alleged that GMC
(1) defamed the Defendant; (2) intentionally inflicted emotional
distress; (3) was liable for damaged under the doctrine of
respondeat superior; and (4) was negligently supervising its
employee.

On May 30, 2012, GMC moved to dismiss the TPC pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The
motion was marked fully submitted on June 27, 2012.

## II.  **The Facts**

The facts are taken from the AC, the AA, the TPC and
the affidavits submitted by the parties.

Cruz is a resident of the State of New Jersey, County
of Essex.  At all relevant times, Cruz worked as a manager and
employee of a parking garage on 122 West 3rd Street, New York,
New York, which is owned by GMC.  GMC is a corporation organized
and existing under the laws of New York and maintains a
principal place of business at 124 East 63rd Street, New York,
New York.

Marchetto is an individual residing in the County of
New York in the State of New York.  Marchetto was a customer of
and maintained a monthly contract with GMC, from which he leased
parking spaces for the purpose of parking his four vehicles.

In early October 2011, Marchetto pulled his 2008
Ferrari into the GMC parking garage, in which Cruz worked.
Marchetto instructed Cruz to get someone to give him a ride to
his restaurant Da Silvano Restaurant, located at 260 6th Avenue,
New York, New York.

According to the AC, "upon information and belief," if
Marchetto did not want a particular employee working for GMC,
GMC would immediately terminate that employee.  Cruz alleges
that he was scared and apprehensive to disobey Marchetto out of
fear of being retaliated against by GMC.  Thus, Cruz arranged
for a ride for Marchetto.  However, right before Marchetto got
into the car, Marchetto turned around and rubbed Cruz' genital
area with his hand.  Cruz alleges that he immediately objected,
to which Marchetto merely smiled and jumped into the car.  Cruz
claims that the touching was uninvited and unwanted and that he
was shocked and horrified by the act.

4

On October 28, 2011, Marchetto pulled his 2008 Ferrari into the GMC garage in which Cruz worked. According to the AC, Marchetto again reached out his hand and began to rub, hold on to, and refused to let go of Cruz' gentials. Cruz alleges that he was in real fear for his personal safety and demanded that Marchetto stop and let go of his genitals. According to Cruz, he never stopped trying to fight back and get away from Marchetto. Once Marchetto released Cruz' genitals, Cruz was able to escape and reported the incident to his supervisors at GMC.

According to the AC, Cruz was violated, humiliated and embarrassed. He also felt physically repulsed, disgusted and intimidated by the alleged contact with Marchetto.

The AA alleges that Marchetto would tip approximately one hundred dollars each time a GMC parking employee parked his car. Eventually, Marchetto reduced his tip to all GMC employees parking his car to fifty dollars. According to the TPC and the AA, Cruz was angered by the reduction in his tip amount and targeted Marchetto because he was the owner of a popular restaurant. Marchetto alleges that, in filing the AC, Cruz falsely, maliciously and wrongfully intended to injure and

destroy his good name, fame and reputation.  In addition, the TPC alleges that Cruz engaged in repeated and ongoing attempts to "shake down" garage patrons for money, advancement, and personal benefit.

Articles reporting the alleged incident were published in various news outlets, including three articles in the New York Post, Gothamist and New York Magazine.  They include:  (1) a New York Post article dated January 23, 2012 titled "Da Silvano owner accused of sexual assault claims he's too old to grope"; (2) a New York Post article dated November 19, 2011 titled "'Grope' claim a $$ grub: Da Silvano Owner"; (3) a New York Post article dated November 19, 2011 titled "Da Silvano owner accused of groping parking-garage manager"; (4) an article in the Gothamist dated November 19, 2011 titled, "Da Silvano Owner Accused of Repeated Unwanted Groping"; and (5) a quote from an article in New York Magazine dated November 21, 2011 stated, "An extra layer of icky has been added his reputation . . ."  According to Marchetto, the publication of these statements have jeopardized his reputation and standing and he has sustained financial loss in his industry.

## III. <u>The Applicable Standard</u>

6

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 235-36, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Cohen v. Stevanovich</u>, 772 F.

7

Supp. 2d 416, 423 (S.D.N.Y. 2010).   Though the court must accept

the factual allegations of a complaint as true, it is "not bound

to accept as true a legal conclusion couched as a factual

allegation." Iqbal, 556 U.S. at 678. (quoting Twombly, 550 U.S.

at 555).

IV.  **Discussion**

The Defamation Claim Against the Plaintiff is Dismissed

The AA alleges defamation arising out of statements

made in connection with this litigation.   Under New York law, to

prevail on a defamation claim, the claimant must establish the

following elements:  "(i) a defamatory statement of fact

concerning the plaintiff, (ii) publication to a third party by

the defendant, (iii) falsity of the defamatory statement, (iv)

some degree of fault, and (v) special damages or per se

actionability (defamatory on its face)." Daniels v. St. Luke's-

Roosevelt Hosp. Center, No. 02-9567(KNF), 2003 WL 22410623, at

*4 (S.D.N.Y. 2003).

Marchetto baldly asserts that he has satisfied the

pleading requirements in order to establish a cause of action

8

for defamation.  Citing to <u>Daniels v. Alvarado</u>, No. 03-
5832(JBW), 2004 WL 502561 (E.D.N.Y. Mar. 21, 2004), he contends
that "the plaintiff is not required to plead a defamation action
in these words or with specificity" and that "the particular
words complained of . . . may be stated generally."  <u>Id.</u> at *7.
However, <u>Daniels</u> is a pre-<u>Twombly</u> case and Marchetto cannot rely
on the less stringent pleading standard and apply it to his
case.

Here, Marchetto has failed to allege facts to satisfy
the elements for a claim of defamation.  First, Marchetto has
not alleged that Cruz made any false statements.  The AA
mentions specific articles in the New York Post, the Gothamist
and New York Magazine reporting on the instant case (AA ¶ 40).
These statements, however, do not reference or assert any
factual statements made by Cruz.  Instead, the articles restate
and summarize the claims alleged by the AC or appear to report
on statements made by Marchetto.

Similarly, Marchetto alleges in a conclusory manner
that Cruz made statements that ended up in the headlines and
quoted in the media (AA ¶ 40) and that "Cruz knew that these
statements were and are false."  (AA ¶ 41).  Without

substantiation, Marchetto deduces that the statements were made
"in reckless disregard of their truth or falsity."  (Id.).
Thus, Marchetto attempts to satisfy the elements of defamation
without offering any specific details about the allegedly
defamatory statements, including when, where or in what manner
they were made.

When a party fails to specifically claim "when,
where, or in what manner the statements were made," then a claim
for defamation may be dismissed for failure to state a claim.
Davison v. Goodwill Industries of Greater New York and Northern
New Jersey, Inc., No. 10-2180 (DLI)(RLM), 2012 WL 1067955, at *4
(E.D.N.Y. Mar. 28, 2012); see also Leung v. New York Univ., No.
08-5150(GBD), 2010 WL 1372541, at *8 (S.D.N.Y. Mar. 29, 2010)
(dismissing defamation claims where the complaint lacked
specificity as to the content of the defamatory statements and
to the time, place and manner in which they were uttered);
Dellefave v. Access Temporaries, Inc., No. 99-6098(RWS), 2001 WL
25745, at *3 (S.D.N.Y. Jan. 10, 2001) (finding that the
"deductions included in the pleadings are insufficient to state
a claim" as are "pleadings which require deductions in order to
state all the elements.").  Here, Marchetto has not pled that

Cruz published any statements to the various media outlets with specificity nor demonstrated any fault on Cruz' part.

In addition, parties to a litigation have an "absolute privilege . . . for defamatory statements made prior to, in the institution of, or during the course of, a proceeding." Long v. Marubeni America Corp., 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005) (quoting ROBERT D. SACK, SACK ON DEFAMATION: LIBEL, SLANDER, AND RELATED PROBLEMS, § 8.2.1.4 at 8-14 (2004)). This privilege is limited and "usually understood as not applying . . . to out-of-court statements made to persons not related to the litigation." Id. (quoting RODNEY SMOLLA, LAW OF DEFAMATION, § 8:9 at 8-12.4 (2nd ed. 2005)). However, out-of-court statements are still privileged "to the extent that they represent fair and true reports of what occurred in the proceeding" with an exception for a party's out-of-court repetition of a maliciously false statement in a pleading. Id. at 295.

The allegations of defamation in this case involve statements from the lawsuit itself and reports made in connection with the litigation in various news outlets, including some that offer the author's opinion of the matter (AA ¶ 39-40). There is no evidence that Cruz offered any of the

11

alleged statements to the media, nor any facts demonstrating
Cruz' malicious intent if he did so.  While the AA alleges that
Cruz "showed actual malice, spite and ill-will toward plaintiff,
in filing the complaint" and intended "to have to have the
allegations publicized widely."  (Id. ¶ 42).  Such allegations
are merely conclusory assertions and deductions, that do not
overcome the privilege or demonstrate malice.  See Davison, 2012
WL 1067955, at *3 ("Plaintiff's defamation claim is largely
premised on conclusory statements and deductions, which this
court need not credit as true when evaluating a motion to
dismiss.").


          Accordingly, Marchetto's defamation claim against Cruz
is dismissed.


The Intentional Infliction of Emotional Distress Claim Against
the Plaintiff is Dismissed

          Under New York law, the tort of intentional infliction
of emotional distress is comprised of four elements:  "(1)
extreme and outrageous conduct, (2) intent to cause severe
emotional distress, (3) a causal connection between the conduct
and the injury, and (4) severe emotional distress." Cabrera v.
N.Y.C., 436 F. Supp. 2d 635, 646-47 (S.D.N.Y. 2006) (quoting

                              12

Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)).

The "requirements of the rule are rigorous, and difficult to

satisfy." PROSSER AND KEETON, TORTS § 12, at 60-61 (5th ed. 1984).

The conduct complained of must be "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly

intolerable in a civilized society." Naughright v. Weiss, 826

F. Supp. 2d 676, 697 (S.D.N.Y. 2011) (quoting Sheila C. v.

Povich, 11 A.D.3d 120, 130-131, 781 N.Y.S.2d 342 (1st Dep't

2004)).


        According to the AA, Cruz "engaged in ongoing and

constant abuse" of Marchetto during the course of his employment

at GMC.  (AA ¶ 48).  The AA also alleges that "conduct in making

defamatory statements about Defendant Marchetto, with knowledge

that there existed no basis in fact for such false statements

and with the knowledge and intention that Defendant would suffer

severe emotional distress as a result, was so outrageous in

character and so extreme in degree as to offend all standards of

civilized conduct."  (AA ¶ 49).


        As discussed above, Marchetto has failed to plead

facts establishing Cruz as a source of any alleged defamatory

13

statements.  Regardless, even assuming Cruz made the statements
to the news outlets and that they are defamatory, they fall well
short of meeting the high standard for extreme and outrageous
conduct.  See Carlson v. Geneva City School Dist., 679 F. Supp.
2d 355, 372 (W.D.N.Y. 2010) (finding that "[d]efamatory
statements are generally not sufficiently extreme and outrageous
to support an [intentional infliction of emotional distress]
claim."); see also Peterec-Tolino v. Commerical Elec.
Contractors, Inc., No. 08-0891(RMB)(KNF), 2009 WL 2591527, at *1
(S.D.N.Y. Aug. 19, 2009) (stating that a state court granted a
motion to dismiss because, among other reasons "a claim for the
intentional infliction of emotional distress may not be
maintained to the extent that the damages sought are duplicative
of those sought in the defamation claim.").

     Furthermore, Marchetto's bare assertions as to Cruz'
conduct merely tracks the language of the elements of the claim.
This is "precisely the type of conclusory allegation which the
Court is not required to credit on a motion to dismiss."  House
v. Wackenhut Servs., No. 10-9476(CM)(FM), 2011 WL 6326100, at *5
(S.D.N.Y. Dec. 16, 2011).

Accordingly, the intentional infliction of emotional distress claim is dismissed.

## The Affirmative Defenses in the AA are Dismissed

Marchetto's first affirmative defense asserts that the AC fails to state a claim upon which relief can be granted. (AA ¶ 27). However, this issue has been litigated in the February 8 Order, which dismissed certain claims but retained battery, assault and intentional infliction of emotional distress as causes of action.

The second affirmative defense alleges that "[i]f there is a debt, it is owned jointly by" Cruz and GMC, so that GMC should be liable for Marchetto's damages. (AA ¶ 28). This claim is discussed and denied below.

The third affirmative defense alleges that Cruz' claims are barred by the doctrine of unclean hands. (AA ¶ 29). Under New York law, the doctrine of unclean hands is "never used unless the plaintiff is guilty of immoral unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party

15

seeking to invoke the doctrine was injured by such conduct."

MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d

682, 712 (S.D.N.Y. 2012).  In addition, the defense "cannot be

asserted against claims involving money damages."  Scalera v.

Electrograph Sys., Inc., 848 F. Supp. 2d 352, 374 n.14 (E.D.N.Y.

2012); Herman v. Nat'l Enter. Sys., Inc., No. 07-337, 2008 WL

4186321, at *11 (W.D.N.Y. Sept. 10, 2008) (finding the

affirmative defense of unclean hands "wholly irrelevant" to

plaintiff's claims involving money damages.).  Despite

Marchetto's attempt to argue that Cruz seeks equitable relief in

this case, the AA clearly seeks compensatory and punitive

monetary damages.  (AC ¶ 46 C-D).


     The fourth affirmative defense alleges that Cruz'

claims are "barred by virtue of [his] own actions or inactions."

(AA ¶ 30).  In essence, Marchetto argues that Cruz should have

in some way prevented the sexual assault alleged to have been

perpetrated against him by either acting or failing to act.

Construing this affirmative defense generously, it amounts

simply to a general denial for which there is no supporting

authority.

16

Taken together, all of the affirmative defenses are dismissed.

The Claims Against GMC in the TPC Are Dismissed

The first two causes of action alleged in the TPC allege defamation and intentional infliction of emotional distress.  (TPC ¶¶ 8-23).  In the TPC, Marchetto does not allege that GMC made any defamatory statements or that GMC engaged in any conduct that intentionally inflicted emotional distress upon him.  Instead, the TPC expressly alleges that the causes of action are based on Cruz' conduct, and does not allege that GMC approved of, authorized, was aware of, or was in any way involved with Cruz' decision to bring his lawsuit or any information that was relayed to the various news outlets (Id.).

In addition, as to the defamation claim, the TPC, like the claim against Cruz in the AA, fails to state any specific details about when, where, or in what manner such statements were made.  Without these details, the TPC does not give GMC the sufficient notice needed to defend against the complaint.  See Leung, 2010 WL 1372541, at *8.  Therefore, the TPC lacks the

17

required specificity with respect to the allegedly defamatory
statements.

With respect to the intentional infliction of
emotional distress claim, Marchetto's allegations involve only
Cruz' conduct and mentions GMC merely to state that "GMC is
liable of the resulting intentional infliction of emotional
distress of Defendant/ Third-Party Plaintiff Marchetto." (TPC ¶
23). As such, under the Twombly/ Iqbal pleading standard,
Marchetto has failed to set forth allegations that, even if
true, would lead to a plausible liability finding against GMC
for either claims and the defamation and intentional infliction
of emotional distress causes of action are dismissed.

The TPC asserts a third cause of action for respondeat
superior, alleging that GMC is liable for the damages caused by
its agents and employees including Cruz. (TPC ¶¶ 24-39).  An
employer is liable under respondeat superior if the employee, in
committing the act complained of, was acting within the scope of
his employment. See Restatement (Third) of Agency § 2.04; see
also Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1166
(E.D.N.Y. 2003) (stating that an employer can only "be held
vicariously liable for a defamatory statement made by one of its

18

employees, but only if the employee made the statement in the course of performance of [his] duties."). Marchetto contends that during the course of Cruz' employment, GMC failed to supervise his actions, which allowed for Cruz' to allegedly engage in ongoing "shake-downs" of Marchetto and other garage patrons. (TPC ¶¶ 28-29). Marchetto alleges that Cruz' actions always occurred during working hours and thus within the course and scope of his employment. (Id. ¶¶ 29-36). He also argues that "GMC was aware of this conduct but failed to investigate the matter." (Id. ¶ 35).

In determining whether an employee is engaged in conduct within the scope of his employment, the following factors are relevant:

> "(1) whether the employee's act fell within the discretion and control of the employer; (2) whether the employee acted under the express or implied authority of the employer; (3) whether the employee's act was in furtherance of the employer's interests; (4) whether the employee's acts were in the 'discharge of duty' to the employer; (5) whether the act was in execution of the employer's orders or part of the work assigned by the employer; and (6) whether the acts were 'so closely connected' with what the employee was hired to do, and 'so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.'"

19

Perks, 251 F. Supp. 2d at 1166.   There is also "no respondeat
superior liability for torts committed for personal motives
unrelated to the furtherance of the employer's business."
Murray v. Watervliet City School Dist., 130 A.D.2d 830, 515
N.Y.S.2d 150, 152 (N.Y.A.D. 3rd Dep't 1987).


        Weighing the factors set forth above, Marchetto has
not demonstrated that Cruz' conduct occurred within the scope of
his employment.  For example, Cruz' alleged statements and
actions fell outside of the control of GMC, did not advance
GMC's interest of retaining customers nor was his conduct
closely connected with why Cruz was hired.  Marchetto has not
set forth a claim for defamation by respondeat superior because
the alleged statements made by Cruz to the media are not alleged
to fall within the job description of a garage employee or GMC's
business.


        While not the subject of a 12(b)(6) motion, the Court
in Perk was faced with comparable claims.  In that case, one
employee of the Town of Huntington brought a sexual harassment
and defamation lawsuit against a Huntington councilwoman.  The
plaintiff alleged that in retaliation for bringing the suit, the
councilwoman had penned a letter of false accusations and sent

it to the media.  He also asserted that the Town of Huntington
was vicariously liable for the councilwoman's statements.  The
Court concluded that, even construing the facts in the light
most favorable to the plaintiff, no reasonable jury could find
that the councilwoman was acting within the scope of her
employment when she contacted the media.  Id. at 1167.

In addition, as discussed above, Marchetto has failed
to plead the requisite extreme and outrageous conduct necessary
to state a claim for intentional infliction of emotional
distress.  See James v. DeGrandis, 138 F. Supp. 2d 402, 421
(W.D.N.Y. 2001) (finding that false charges of sexual harassment
do not rise to the level of outrage required to recover under
intentional infliction of emotional distress).  There are no
facts alleged in the TPC as to GMC on this cause of action.

Finally, the TPC alleges negligent supervision.  (TPC
¶ 40-51).  To state a claim for negligent supervision or
retention under New York law, in addition to the standard
elements of negligence, a plaintiff must show:  "(1) that the
tort-feasor and the defendant were in an employee-employer
relationship; (2) that the employer 'knew or should have known
of the employee's propensity for the conduct which caused the

21

injury' prior to the injury's occurrence; and (3) that the tort
was committed on the employer's premises or with the employer's
chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d
Cir. 2004) (citations omitted).

Here, there is no dispute that Cruz and GMC were in an
employer-employee relationship or that any alleged tort was
committed on the employer's premises.  Even construing
Marchetto's claim broadly, however, there are no facts plead
showing that GMC knew or had any reason to know that Cruz had a
propensity for committing the alleged torts.  For example,
Marchetto does not claim that he or any other customer made any
complaints to GMC about Cruz, which went ignored.  Without any
facts supporting that GMC had knowledge of Cruz' tendency or
propensity for bad conduct, Marchetto's claim fails. Tatum v.
City of New York, No. 06 Cv. 4290(BSJ)(GWG), 2009 WL 124881, at
*10 (Jan. 20, 2009) (dismissing the plaintiff's claim where he
failed to "ma[ke], let alone substantiat[e], any . . .
allegations" that the defendant knew or should have known of a
corrections officer's propensity to commit injury).

In addition, the TPC alleges that Cruz "frequently
used vehicles of garage patrons to transport other patrons to

22

their destinations without the permission of the owners of the
vehicles," that he "frequently brought his friends into the
garage while not actually working and/or authorized to access
the vehicles of garage patrons," and "solicited money from
garage patrons . . . separate from the business of the garage."
(TPC ¶¶ 41-43).

It is unclear from the TPC if these are the torts Cruz
is alleged to have committed, and if so, no facts support
causation or how Marchetto suffered an injury.  Marchetto also
confusingly states that GMC should be held liable because they
did not conduct an investigation Cruz' complaints of assault and
battery (TPC ¶ 46).

Accordingly, the four claims against GMC in the TPC
are dismissed.

### V. Conclusion

Based upon the conclusions set forth above, the
Plaintiff's motion to dismiss the counterclaims and affirmative
defenses of the Defendant is granted.

23

In addition, the third-party defendant GMC motion to dismiss the TPC is granted.  The Plaintiff is granted leave to replead the TPC within 20 days.

It is so ordered.

New York, NY
September 28, 2012

_____
ROBERT W. SWEET
U.S.D.J.